CUNEO, GILBERT & LADUCA, LLP
Matthew E. Miller (BBO# 559353)
507 C Street NE
Washington, DC 20002
Telephone:  202-789-3960
Facsimile: 202-589-1813

MIRABELLA LAW
Erica Mirabella (BBO# 676750)
132 Boylston Street, 5th Floor
Boston, MA 02116
Telephone: 617-580-8270
Facsimile: 617-583-1905

*Attorneys for Plaintiff*

[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TRACEY M. KNOX on behalf of himself and all others similarly situated, | CASE No. _____ |
| Plaintiff, | **CLASS ACTION COMPLAINT** **DEMAND FOR JURY TRIAL** |
| v. | |
| WHOLE FOODS MARKET, INC., | |
| Defendant. | |

Plaintiff Tracey Knox ("Plaintiff") files this class action complaint ("Class Action Complaint") on behalf of himself and all others similarly situated, by and through the undersigned attorneys, against Whole Foods Market Inc. (hereinafter " Whole Foods" or "Defendant"), and states as follows:

## INTRODUCTION & FACTUAL BACKGROUND

1.      This is an action on behalf of Plaintiff, and a class of all others similarly situated against Defendant, the manufacturers of Whole Foods 365 Everyday Value Plain Greek Yogurt (hereinafter the "Yogurt"), which expressly states on the label that it contains 2 grams of sugar per serving.  This statement is false.  In fact, in six recent tests conducted by the venerable consumer publication Consumer Reports, the Yogurt had 11.4 grams of sugar per serving on average—nearly six times the stated amount.  The claimed amount of sugar raised eyebrows because it is much lower than competitors, which generally range between five and 10 grams of sugar per serving.  As a result of Defendant's materially false statements concerning the sugar content in the Yogurt, Plaintiff and the proposed class ("Class") (defined in ¶ 20 below) have been harmed and have suffered damages.

2.      One of the mottos of Whole Foods is "Health Starts Here".  Defendant markets itself and its 365 brand products as a healthier alternative to other stores and brands.  Defendant advertises and warrants the statements on its label and as they pertain to the Yogurt the statements are demonstrably false.  As Consumer Reports aptly put it, "Given Whole Foods' care and attention to food content, this discrepancy in the sugar content in one of its own branded products is that much more bewildering."

3.      The Yogurt market in the United States is enormous by any standard—it tops $7 billon dollars per year.  Greek yogurt in particular comprises a major portion of the overall yogurt market, due in large measure to its high protein content and perceived health value over traditional yogurt.

4.      Among health conscious consumers, yogurt can be and is an important component of a healthy diet.  For those with health conditions, such as diabetes, the accuracy of sugar

content in products is extremely important. Defendant has a duty to provide accurate information on its product label and has failed to do so.

5. Defendant is responsible and liable for, among other things, providing notice to consumers of accurate information concerning the sugar content of the Yogurt and repayment of its ill-gotten gains, as well as other related consequential damages that resulted from Defendant's provision of false and misleading information concerning the Yogurt.

## PARTIES

6. Plaintiff Tracey Knox is a resident of Brookline, Massachusetts. Over the last several years, and as recently as July 2014, Plaintiff Knox has repeatedly purchased the Yogurt. Plaintiff purchased the Yogurt because of its purported health benefits—including low sugar content. A picture of Yogurt recently purchased by Plaintiff in late July 2014 appears below:



Although Plaintiff was unaware of the Consumer Reports information concerning the false information Defendant provided about the Yogurt at the time of purchase, Plaintiff's purchase

occurred after Defendant was made aware of the discrepancies demonstrated by Consumer Reports' testing.  Despite notice of the discrepancy Defendant has not removed the Yogurt from the shelves or provided any corrective notice to purchasers, like Plaintiff.

7.      Whole Foods Market, Inc., is incorporated in Texas and maintains it principal executive offices at 550 Bowie Street in Austin, Texas.  Defendant's most recent form 10k indicates that as of September 29, 2013, Whole Foods operates 347 stores in 40 states.  With 28 Whole Foods stores in operation, Massachusetts is second only to California in terms of the number of stores in the state.

## JURISDICTION AND VENUE

8.      As a result of regularly conducting business, marketing, distributing, promoting and/or selling products—including the Yogurt—throughout the State of Massachusetts, Defendant obtained the benefits of the laws of Massachusetts and profited from Massachusetts commerce.

9.      This Court has jurisdiction over this action pursuant to 28 U.S.C § 1332(d)(2)(A), in that amount in controversy exceeds $5,000,000 and the proposed class includes persons who are citizens of States different from the State where Defendant is incorporated and has its principal place of business.

10.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because most of the events or omissions giving rise to Plaintiff's claims occurred in this District and Defendant is subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

11.      Upon information and belief Defendant is, and at all times relevant hereto was, engaged in the business of designing, developing, manufacturing, distributing, marketing, and

selling, among other things, the Yogurt.  Defendant promoted, distributed and sold the Yogurt through its 28 stores located in the Commonwealth of Massachusetts.

12.     Defendant was negligent in its testing by its failure to provide accurate nutritional information.  Defendant knew or should have known that the information it provided concerning the sugar content of the Yogurt was false.

13.     In the face of powerful evidence from Consumer Reports and test results that simply do not pass the straight-face test, Defendant weakly responded to the evidence of its false nutritional information by simply asserting that they relied upon testing results from reputable third-party labs.  This statement suggests that Defendant relied upon multiple labs.  But Defendant does not identify any lab by name, nor when the testing was conducted.  Indeed, it stands to reason that any reputable lab experienced in food testing would compare its test results with test results for other similar products as the most basic form of quality control.  Consumer Reports indicated that it tested 27 varieties of Greek yogurt with five grams of sugar being the absolute lowest sugar content of any other Yogurt.  It does not appear that Defendant's labs are as reputable as they suggest.  A more logical interpretation is that Defendant recognized a competitive advantage by providing nutritional information that was markedly better than the other manufacturers in the marketplace.

14.     The misleading nature of Defendant's statements concerning the Yogurt are all the more concerning because of the numerous members of the consuming public for whom sugar is not just an important component of their diet, but an essential part of their health and wellbeing.  For example, for those with diabetes every gram of sugar must be counted with exactitude.  Defendant's callous disregard put these people at risk.

15.     Due to its materially misleading statements, Plaintiff and members of the Class have suffered harm and injury through their purchase of Yogurt that did not conform to Defendant's advertising or warranties.

**Inadequate Testing of the Yogurt**

16.     Defendant did not properly test the Yogurt for sugar and, as a result provided false nutritional information to the members of the Class.

17.     Consumer Reports indicated that of 27 competitors the closest had two-and-a-half-times as much sugar as the Yogurt, this should have raised red flags, yet it apparently did not.  Indeed, despite the story, Defendant has apparently made no effort to mitigate loses by pulling the Yogurt from its shelves or re-labeling it with accurate information.

**False Advertising of the Yogurt**

18.     Defendant falsely advertised that the Yogurt contains two grams of sugar per serving.  In reality the Yogurt contains over 11 grams of sugar per serving.  This misstatement constitutes a substantial misrepresentation of a material fact and undermines Defendant's assertions concerning the health benefits of the Yogurt.

19.     Had Defendant not withheld and omitted important information about the nutritional content of the Yogurt, Plaintiff and the members of the Class would not have purchased the Yogurt, or would have paid less.

## CLASS ACTION ALLEGATIONS

20.     Plaintiff seeks to bring this case as a class action, pursuant to Rule 23 of the Federal Rules of Procedure. The proposed class (the "National Class") is defined as follows:

> All persons and entities within the United States that purchased the Yogurt on or after August 1, 2010.

Additionally, or alternatively, Plaintiff proposes a class or subclass (the "Massachusetts Subclass") defined as follows:

> All persons and entities within the Commonwealth of Massachusetts that purchased the Yogurt on or after August 1, 2010.

Collectively the National Class and the Massachusetts Subclass are referred to herein as the "Class." Expressly excluded from the National Class and Massachusetts Subclass are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Defendant and any entity in which Defendant has a controlling interest, or which has a controlling interest in Defendant, and its legal representatives, assigns and successors; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

**Numerosity**

21.     Defendant has harmed and continues to harm members of the Class with their false nutritional information. The members of the proposed Class are so numerous that joinder of all members is impracticable.

22.     The total number of Class members is unknown, but such information is available through records in the control of Defendant. However, due to the size of the market for yogurt in the United States and the fact that Defendant sells its Yogurt in at least 347 stores dispersed throughout at least 40 states, Plaintiff believes the Class consists of many thousands of consumers, making joinder of all Class members impracticable.

**Common Questions of Law and Fact**

23.     Common questions of law and fact affect the right of each Class member and common relief by way of damages is sought for Plaintiff and Class members.

24.     The harm that Defendant has caused or could cause is substantially uniform with respect to Class members.  Common questions of law and fact that affect the Class members include, but are not limited to:

> (a)     Whether Defendant sold the Yogurt with false nutritional data concerning the amount of sugar per serving;
>
> (b)     Whether Defendant failed to prevent damages by failing to remove the Yogurt from its shelves when its false information became public;
>
> (c)     Whether Defendant was unjustly enriched by the sale of the Yogurt through false and/or deceptive tactics;
>
> (e)     Whether Defendant knowingly provided false information to Plaintiff and the Class members;
>
> (g)     Whether Defendant omitted material information when they sold the Yogurt;
>
> (i)     Whether the members of the Class have sustained damages and, if so, the proper measure of such damages.

**Typicality**

25.     The claims and defenses of the representative Plaintiff are typical of the claims and defenses of the Class.

**Adequacy of Representation**

26.     The representative Plaintiff, will fairly and adequately assert and protect the interests of the Class:

> (a)     He has hired attorneys who are experienced in prosecuting class action claims and will adequately represent the interests of the Class; and

(b)    He has no conflict of interest that will interfere with the maintenance of

this class action.

**Superiority**

27.    A class action provides a fair and efficient method for the adjudication of this

controversy for the following reasons:

(a)    The common questions of law and fact set forth herein predominate over

any questions affecting only individual Class members;

(b)    The Class is so numerous as to make joinder impracticable. However, the

Class is not so numerous as to create manageability problems. There are

no unusual legal or factual issues that would create manageability

problems;

(c)    Prosecution of a separate action by individual members of the Class would

create a risk of inconsistent and varying adjudications against Defendant

when confronted with incompatible standards of conduct;

(d)    Adjudications with respect to individual members of the Class could, as a

practical matter, be dispositive of any interest of other members not parties

to such adjudications, or substantially impair their ability to protect their

interests;

(e)    Upon information and belief, Defendant is responsible for the design and

manufacture of the Yogurt, which was distributed and sold in

Massachusetts, making this forum appropriate for the litigation of the

claims of the entire Class; and

(f)     The claims of the individual Class members are small in relation to the

expenses of litigation, making a Class action the only procedure in which

Class members can, as a practical matter, recover. However, the claims of

individual Class members are large enough to justify the expense and

effort in maintaining a class action.

## TOLLING OF ANY APPLICABLE STATUTES OF LIMITATIONS

28.     Plaintiff and putative members of the Class are within the applicable statute of

limitation for the claims presented here.  Defendant's failed to disclose this known but non-

public information about the Yogurt—information over which it had exclusive control until at the

earliest July 2014.  Because Plaintiff and Class members therefore could not reasonably have

known that the sugar content on the Yogurt was false, Defendant is estopped from asserting any

statute of limitation defenses that might otherwise be applicable to the claims asserted herein.

## COUNT I
## BREACH OF WARRANTY

29.     Plaintiff and the Class incorporate by reference each preceding and succeeding

paragraph as though fully set forth at length herein.

30.     Whole Foods sold the Yogurt in its regular course of business.  Plaintiff and

Class members purchased the Yogurt.

31.     The Yogurt is a "consumer product" within the meaning of the Magnuson-Moss

Warranty Act, 15 U.S.C. § 2301(1), and Massachusetts law.

32.     Plaintiff and Class members are "consumers" and "buyers" within the meaning

of the Magnuson-Moss Act, 15 U.S.C. § 2301(3) and Massachusetts law.

33.     Whole Foods is a "supplier" and "warrantor" within the meaning of the

Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4) – (5).   Whole Foods is also a

"manufacturer" and "seller" within the meaning of Massachusetts law.

34.    Defendant made promises and representations in an express warranty provided to all consumers, which became the basis of the bargain between Plaintiff, Class members and Defendant.  Defendant gave these express warranties to Plaintiff and Class members in written form on the labels of the Yogurt.

35.    Defendant's written affirmations of fact, promises and/or descriptions as alleged are each a "written warranty".  The express warranty issued in writing by Whole Foods to Plaintiff and Class members that accompanies each of Yogurt sold is a "written warranty" within the meaning of the Magnuson-Moss Act, 15 U.S.C. §2301(6).

36.    By placing the Yogurt into the stream of commerce, by operation of law including Mass Gen. Laws Ann. Ch. 106, §§ 2–314 – 318 and the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et. seq.*, Defendant also impliedly warranted to Plaintiff and Class members that the Yogurt was accurately labeled in conformance with the law.

37.    Defendant breached all applicable warranties because the Yogurt nutritional labeling of sugar content in the Yogurt is false.

38.    The sugar content was inaccurate when the Yogurt left Defendant's possession, was distributed to Defendant's 347 markets and remained false when the Yogurt was sold to Plaintiff and the Class members.  The false nutritional information provided on the label was undiscoverable to Plaintiff and the Class members at the time of purchase of the Yogurt.

39.    All conditions precedent to seeking liability under this claim for breach of express and implied warranty have been performed by or on behalf of Plaintiff and others in terms of paying for the goods at issue.  Defendant had actual and/or constructive notice of the false labeling information and to date has taken no action to remedy its breaches of express and

implied warranty.

40.    Defendant was on notice of its breaches of express and implied warranty by virtue of the Consumer Reports article referenced herein, as well as numerous stories including one that appeared on Good Morning America.  Further, Defendant previously knew or should have known of the falsity of the label because its claimed sugar content was strikingly low when compared to the entire remainder of the Greek yogurt business segement.

41.    Defendant breached these express and implied warranties, as the Yogurt did not contain the properties Defendant represented.  Defendant has refused to remedy such breaches.

42.    Defendant's breaches of warranty have caused Plaintiff and Class members to suffer injuries, paying for falsely labeled products, and entering into transactions they would not have entered into for the consideration paid.  As a direct and proximate result of Defendant's breaches of warranty, Plaintiff and Class members have suffered damages and continue to suffer damages, including economic damages in terms of the difference between the value of the Yogurt as promised and the value of the Yogurt as delivered.

30.    As a result of the breach of these warranties, Plaintiff and Class members are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and/or other relief as deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.

## COUNT II
## UNJUST ENRICHMENT

31.    Plaintiff re-alleges and incorporates by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

32.     Plaintiff and the Class have conferred substantial benefits on Defendant by purchasing the Yogurt, and Defendant has knowingly and willingly accepted and enjoyed these benefits.

33.     Defendant either knew or should have known that the payments rendered by Plaintiff and the Class were given and received with the expectation that the Yogurt would be as represented and warranted.  For Defendant to retain the benefit of the payments under these circumstances is inequitable.

34.     Defendant, through deliberate misrepresentations or omissions in connection with the advertising, marketing, promotion, and sale of the Yogurt reaped benefits, which resulted in Defendant's wrongful receipt of profits.

35.     Equity demands disgorgement of Defendant's ill-gotten gains.  Defendant will be unjustly enriched unless Defendant is ordered to disgorge those profits for the benefit of Plaintiff and the Class.

36.     As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiff and the Class are entitled to restitution from and institution of a constructive trust disgorging all profits, benefits, and other compensation obtained by Defendant.

### COUNT III
### WHOLE FOODS'S NEGLIGENCE

37.     Plaintiff re-alleges and incorporates by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

38.     Whole Foods owed a duty to Plaintiff and the proposed Class to exercise reasonable care while designing, manufacturing, testing, and marketing the Yogurt.

39.     Whole Foods breached its duty to Plaintiff and the Class by designing, manufacturing, selling, advertising, and warranting a product that did not conform to its labeling

and by failing to take those steps necessary to repair or otherwise discontinue selling this mis-labeled product to consumers.

40.    Whole Foods knew or should have known that the Yogurt does not contain accurate nutritional information.

41.    Despite lacking sufficient knowledge regarding the actual sugar content of the Yogurt, , Whole Foods marketed the Yogurt as containing two grams of sugar per serving, when in actuality, it contained nearly six times that amount.

42.    Plaintiff and the proposed Class were not aware of the falsity of Defendant's statements concerning the Yogurt when they purchased the product.

43.    As a direct and proximate cause of Defendant's failures, Plaintiff and the Class have suffered and will continue to suffer damages and economic loss described fully above in an amount to be proven at trial.

44.    As a result of Whole Foods's negligence, Plaintiff and the Class have suffered actual damages in that they purchased Yogurt that did not conform to Defendant's representations

45.    Plaintiff, on behalf of himself and all others similarly situated, demands judgment against Whole Foods for compensatory damages, for the establishment of a common fund, plus attorneys' fees, interest and costs.

## COUNT IV
## DECLARATORY AND INJUNCTIVE RELIEF

46.    Plaintiff re-alleges and incorporates by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

47.    Defendant acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole within the meaning of Fed. R. Civ. P. 23.

48.     Plaintiff, on behalf of himself and putative Class members, seek a Court declaration of the following:

    a.  The Yogurt developed, manufactured, marketed, tested and sold by Whole Foods on or after August 1, 2010 contained false and misleading nutritional information;

    b.  Defendant knew or should have known of the false information it provided to Plaintiff and Class members and thereby breached its warranties to Plaintiff and the Class; and

    c.  Defendant shall remove all falsely labeled Yogurt from its shelves, or re-label with accurate nutritional information.

## PRAYER FOR RELIEF

49.     WHEREFORE, Plaintiff prays that this case be certified and maintained as a Class action and for judgment to be entered in favor of Plaintiff and the Class against Defendant Whole Foods as follows:

    A.  Enter an order certifying the proposed Class, designating Plaintiff as the Class representative, and designating the undersigned as Class counsel;

    B.  Declare that Defendant is financially responsible for notifying all Class members of the problems with the labeling of the Yogurt;

    C.  Declare that Defendant must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale of the Yogurt, or order Defendant to make full restitution to Plaintiff and the members of the Class;

    D.  For economic and compensatory damages on behalf of Plaintiff and all members of the Class;

    E.  For punitive or exemplary damages;

    F.  For injunctive and declaratory relief;

    G.  For reasonable attorneys' fees and reimbursement of all costs for the prosecution of this action; and

    H.  For such other and further relief as this Court deems just and appropriate.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

**Dated:  August 1, 2014**          Respectfully submitted,

By:/s/ Erica C. Mirabella_____
Erica C. Mirabella (MA Bar No. 676750)
MIRABELLA LAW
1322 Boylston St., 5th Flr.
Boston, MA 02116
(617) 580-8270
(617) 583-1905 (fax)

Matthew E. Miller (MA Bar No. 559353)
William H. Anderson
CUNEO GILBERT & LADUCA, LLP
507 C Street, NE
Washington, DC 20002
(202) 789-3960
(202) 789-1813 (fax)

Jon Herskowitz
BARON & HERSKOWITZ
9100 S. Dadeland Blvd.
Suite 1704
Miami, FL 33156
(305) 670-0101
(305) 670-2393 (fax)