CUNEO, GILBERT & LADUCA, LLP
Matthew E. Miller (BBO# 559353)
507 C Street NE
Washington, DC 20002
Telephone: 202-789-3960
Facsimile: 202-589-1813

MIRABELLA LAW
Erica Mirabella (BBO# 676750)
132 Boylston Street, 5th Floor
Boston, MA 02116
Telephone: 617-580-8270
Facsimile: 617-583-1905

*Attorneys for Plaintiff*

[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TRACEY KNOX, SARAH MCDONAGH, DEREK GULUBA, and BARBARA TREVINO on behalf of themselves and all others similarly situated, | CASE No. 1:14-cv-13185 |
| Plaintiffs, | **SECOND AMENDED CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| WHOLE FOODS MARKET GROUP, INC. and WFM PRIVATE LABEL, L.P., | |
| Defendants. | |

Plaintiffs Tracey Knox, Sarah McDonagh, Derek Guluba and Barbara Trevino (together "Plaintiffs") file this class action complaint ("Class Action Complaint") on behalf of themselves and all others similarly situated, by and through the undersigned attorneys, against Whole Foods

Market Group, Inc. and WFM Private Label, L.P. (hereinafter, collectively, " Whole Foods" or

"Defendants"), and state as follows:

## INTRODUCTION & FACTUAL BACKGROUND

1.      This is an action on behalf of Plaintiffs, and a class of all others similarly situated

against Defendants, the manufacturers, promoters, and sellers of Whole Foods 365 Everyday

Value Plain Greek Yogurt (hereinafter the "Yogurt"), which expressly states on the label that it

contains 2 grams of sugar per one cup serving.  This statement is false.  In fact, in six recent tests

conducted by the venerable consumer publication Consumer Reports, the Yogurt had 11.4 grams

of sugar per serving on average—nearly six times the stated amount.  The claimed amount of

sugar is much lower than that of competitors, which generally range between five and 10 grams

of sugar per serving, and is a big draw for consumers who look to limit their sugar intake.

Additionally, low sugar is generally considered healthier, and the low sugar characteristics of a

food product command a premium in the marketplace.  As a result of the false representation,

Defendants were able to sell the Yogurt at a higher price than they would have had they labeled

the sugar content accurately.  Thus, all consumers who purchased the Yogurt, whether or not

they cared about the sugar content, paid more for the Yogurt than they would have had it been

truthfully labeled.  As a result of Defendants' materially false statements concerning the sugar

content in the Yogurt, Plaintiffs and the proposed class ("Class") (defined in ¶ 25 below) have

been harmed and have suffered damages.

2.      One of the mottos of Whole Foods is "Health Starts Here."  Whole Foods markets

itself and its 365 brand products as a healthier alternative to other stores and brands.  Defendants

advertise and warrant the statements on their label, and as they pertain to the Yogurt the

statements are demonstrably false.  As Consumer Reports aptly put it, "Given Whole Foods' care

and attention to food content, this discrepancy in the sugar content in one of its own branded products is that much more bewildering." Even a cursory review of the Yogurt compared to competitors should have revealed to the nutrition experts working for Defendants that something was wrong.

3. The Yogurt market in the United States is enormous by any standard—it tops seven billion dollars per year. Greek yogurt, in particular, comprises a major portion of the overall yogurt market, due in large measure to its high protein content and perceived health value over traditional yogurt.

4. Among health conscious consumers, yogurt can be and is an important component of a healthy diet. For those with health conditions, such as diabetes, the accuracy of sugar content in products is extremely important. Defendants have a duty to provide accurate information on their product labels, but they have failed to satisfy that obligation. Additionally, any consumer who purchased the Yogurt suffered harm, irrespective of their health conscious sensibilities or health conditions, in the form of a higher price that Defendants were able to command for the product based on the false representation regarding its sugar content.

5. Defendants are responsible and liable for, among other things, providing notice to consumers of accurate information concerning the sugar content of the Yogurt and repayment of their ill-gotten gains, as well as other related consequential damages that resulted from Defendants' provision of false and misleading information concerning the Yogurt.

## PARTIES

6. Plaintiff Tracey Knox is a resident of Brookline, Massachusetts. Over the last several years, and as recently as July 2014, Plaintiff Knox has repeatedly purchased the Yogurt. Plaintiff purchased the Yogurt in part because of the low sugar content. A picture of Yogurt

recently purchased by Plaintiff in late July 2014 appears below:



Although Plaintiff was unaware of the Consumer Reports publication concerning the false information Defendants provided about the Yogurt at the time of purchase, Plaintiff's purchase occurred after Defendants were made aware of the discrepancies demonstrated by Consumer Reports' testing. Despite notice of the discrepancy, Defendants have not removed the Yogurt from the shelves or provided any corrective notice to purchasers, like Plaintiff.

7.     Plaintiff Sarah McDonagh is a resident of Reading, Massachusetts. Plaintiff McDonagh has repeatedly purchased the Yogurt in part because of its low sugar content. As recently as mid-August 2014, Ms. McDonagh purchased the Yogurt from her local Whole Foods store located at 100 Market Street, Lynnwood, Massachusetts.

8.     Plaintiff Derek Guluba is a resident of Wheaton, Illinois. Plaintiff Guluba has purchased the Yogurt several times in part because of its low sugar content. Most recently, Plaintiff Guluba purchased the Yogurt in July 2014 from his local Whole Foods store located at

151 Rice Lake Square, Wheaton, Illinois.

9.     Plaintiff Barbara Trevino is a resident of Los Angeles, California.  Plaintiff Trevino has repeatedly purchased the Yogurt, most recently in early August 2014 in part because of its low sugar content.  Plaintiff Trevino purchased the Yogurt most recently from her local Whole Foods, located at 6350 West 3rd Street, Los Angeles, California.

10.     Defendant Whole Foods Market Group, Inc., is incorporated in Delaware and maintains it principal executive offices at 550 Bowie Street in Austin, Texas.  Whole Foods Market Group, Inc. is a subsidiary of Whole Foods Market, Inc., which is simply a holding company.  The most recent form 10k indicates that as of September 29, 2013, Whole Foods operates 347 stores in 40 states and the District of Columbia.  There are 73 Whole Foods Stores in California.  Second only to California, there are 28 Whole Foods stores operating in Massachusetts.  There are 18 Whole Foods stores operating in Illinois.

11.     Defendant WFM Private Label, L.P. is incorporated in Delaware and maintains its principal executive offices at 550 Bowie Street in Austin, Texas.  Upon information and belief, WFM Private Label, L.P. is responsible for Whole Foods' branded products, such as the Yogurt.

## JURISDICTION AND VENUE

12.     As a result of regularly conducting business, marketing, distributing, promoting, and/or selling products—including the Yogurt—throughout the State of Massachusetts, Defendants obtained the benefits of the laws of Massachusetts and profited from Massachusetts commerce.

13.     This Court has jurisdiction over this action pursuant to 28 U.S.C § 1332(d)(2)(A), in that the amount in controversy exceeds $5,000,000 and the proposed class includes persons who are citizens of States different from the State where Defendants are incorporated and have

their principal place of business.  This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because most of the events or omissions giving rise to the Massachusetts Plaintiffs' claims occurred in this District and Defendants are subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

15.     Upon information and belief Defendants are, and at all times relevant hereto were, engaged in the business of designing, developing, manufacturing, distributing, marketing, and selling, among other things, the Yogurt.  Defendants promoted, distributed, and sold the Yogurt through their 347 stores located throughout the United States, including the 28 stores located in the Commonwealth of Massachusetts.

16.     Defendants were negligent, at the very least, in their testing by their failure to provide accurate nutritional information or exercise reasonable care in ensuring that the nutritional information on the label of the Yogurt was accurate.  Defendants knew or should have known that the information they provided concerning the sugar content of the Yogurt was false.

17.     In the face of powerful evidence from Consumer Reports and test results that simply do not pass the straight-face test, Defendants weakly responded to the evidence of its false nutritional information by simply asserting that they relied upon testing results from reputable third-party labs.  This statement suggests that Defendants relied upon multiple labs. But Defendants did not identify any lab by name, nor when the testing was conducted.  Indeed, it stands to reason that any reputable lab experienced in food testing would compare its test results with test results for other similar products as the most basic form of quality control.  Consumer Reports indicated that it tested 27 varieties of Greek yogurt with five grams of sugar being the

absolute lowest sugar content of any other Yogurt. It does not appear that Defendants' labs are as reputable as they suggest. A more logical interpretation is that Defendants recognized a competitive advantage by providing nutritional information that was markedly better than the other manufacturers in the marketplace.

18.     The misleading nature of Defendants' statements concerning the Yogurt are all the more concerning because of the numerous members of the consuming public for whom sugar is not just an important factor in their diet, but an essential part of their health and wellbeing. For example, for those with diabetes every gram of sugar must be counted with exactitude. Defendants' callous disregard and/or negligence put these and other people at risk.

19.     Even more egregious, is Defendants' refusal to recall the Yogurt after it was on notice of the mislabeling, and continuing to sell the product with the false labeling.

20.      Due to the materially misleading statements at issue in this case, Plaintiffs and members of the Class have suffered harm and injury through their purchase of Yogurt that did not conform to Defendants' advertising or warranties.

**Inadequate Testing of the Yogurt**

21.     Defendants did not properly test the Yogurt for sugar and, as a result, provided false nutritional information to the members of the Class.

22.     Consumer Reports indicated that, of 27 competitors, the closest had two-and-a-half-times as much sugar as the Yogurt; this should have raised red flags, yet it apparently did not. This is all the more striking since Defendants run a company purported to be the healthiest large grocery store chain. Indeed, despite the Consumer Reports story, Defendants have apparently made no effort to mitigate losses by pulling the Yogurt from its shelves or re-labeling it with accurate information.

**False Advertising of the Yogurt**

23.    Defendants falsely advertised that the Yogurt contains two grams of sugar per serving.  In reality the Yogurt contains over 11 grams of sugar per serving.  This misstatement constitutes a substantial misrepresentation of a material fact.

24.    Had Defendants not made the false representation regarding the sugar content of the Yogurt, Plaintiffs and the members of the Class would not have purchased the Yogurt, or would have paid less for it.

## CLASS ACTION ALLEGATIONS

25.    Plaintiffs seek to bring this case as a class action, pursuant to Rule 23 of the Federal Rules of Procedure.  The proposed class (the "National Class") is defined as follows:

> All United States consumers who purchased the Yogurt on or after August 1, 2010.

Additionally, or alternatively, Plaintiffs propose the following "State Subclasses".

The "Massachusetts Subclass"

> All Massachusetts consumers who purchased the Yogurt on or after August 1, 2010.

The "Illinois Subclass"

> All Illinois consumers who purchased the Yogurt on or after August 1, 2010.

The "California Subclass"

> All California consumers who purchased the Yogurt on or after August 1, 2010.

Collectively the National Class, the Massachusetts Subclass, the Illinois Subclass, and the

California Subclass are referred to herein as the "Class." Expressly excluded from the National Class and State Subclasses are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Defendants and any entity in which Defendants have a controlling interest, or which have a controlling interest in Defendants, and its legal representatives, assigns, and successors; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

### Numerosity

26. Defendants have harmed and continue to harm members of the Class with their false nutritional information. The members of the proposed Class are so numerous that joinder of all members is impracticable.

27. The total number of Class members is unknown, but such information is available through records in the control of Defendants. However, due to the size of the market for yogurt in the United States and the fact that Defendants sell their Yogurt in at least 347 stores dispersed throughout at least 40 states and the District of Columbia, Plaintiffs believe the Class consists of many thousands of consumers, making joinder of all Class members impracticable.

### Common Questions of Law and Fact

28. Common questions of law and fact affect the right of each Class member and common relief by way of damages and injunctive relief is sought for Plaintiffs and Class members.

29. The harm that Defendants have caused or could cause is substantially uniform with respect to Class members. Common questions of law and fact that affect the Class members include, but are not limited to:

(a) Whether Defendants sold the Yogurt with false nutritional data concerning the amount of sugar per serving;

(b) Whether Defendants failed to prevent damages by failing to remove the Yogurt from their shelves when the false information became public;

(c) Whether Defendants were unjustly enriched by the sale of the Yogurt through false and/or deceptive tactics;

(e) Whether Defendants knowingly provided false information to Plaintiffs and the Class members;

(g) Whether Defendants omitted material information when they sold the Yogurt;

(h) Whether the members of the Class have sustained damages and, if so, the proper measure of such damages.

## Typicality

30. The claims and defenses of the representative Plaintiffs are typical of the claims and defenses of the Class members.

## Adequacy of Representation

31. The representative Plaintiffs will fairly and adequately assert and protect the interests of the Class:

(a) They have hired attorneys who are experienced in prosecuting class action claims—including food labeling claims—and will adequately represent the interests of the Class; and

(b) They have no conflict of interest that will interfere with the maintenance of this class action.

## Superiority

32.     A class action provides a fair and efficient method for the adjudication of this controversy for the following reasons:

(a)     The common questions of law and fact set forth herein predominate over any questions affecting only individual Class members;

(b)     The Class is so numerous as to make joinder impracticable. However, the Class is not so numerous as to create manageability problems. There are no unusual legal or factual issues that would create manageability problems;

(c)     Prosecution of a separate action by individual members of the Class would create a risk of inconsistent and varying adjudications against Defendants when confronted with incompatible standards of conduct;

(d)     Adjudications with respect to individual members of the Class could, as a practical matter, be dispositive of any interest of other members not parties to such adjudications, or substantially impair their ability to protect their interests;

(e)     Upon information and belief, Defendants are responsible for the design and manufacture of the Yogurt, which was distributed and sold in Massachusetts, making this forum appropriate for the litigation of the claims of the entire Class; and

(f)     The claims of the individual Class members are small in relation to the expenses of litigation, making a Class action the only procedure in which Class members can, as a practical matter, recover.  However, the claims of

individual Class members are large enough to justify the expense and effort in maintaining a class action.

## TOLLING OF ANY APPLICABLE STATUTES OF LIMITATIONS

33. Plaintiffs and putative members of the Class are within the applicable statute of limitation for the claims presented here. Defendants failed to disclose this known but non-public information about the Yogurt—information over which it had exclusive control until at the earliest July 2014. Because Plaintiffs and Class members therefore could not reasonably have known that the sugar content on the Yogurt was false, Defendants are estopped from asserting any statute of limitation defenses that might otherwise be applicable to the claims asserted herein.

## COUNT I
## BREACH OF WARRANTY
### (On Behalf of the National Class and State Subclasses)

34. Plaintiffs re-allege and incorporate by reference all factual allegations in this Class Action Complaint as though set forth fully herein.

35. Whole Foods sold the Yogurt in its regular course of business. Plaintiffs and Class members purchased the Yogurt.

36. Defendants made promises and representations in an express warranty provided to all consumers, which became the basis of the bargain between Plaintiffs, Class members, and Defendants. Defendants gave these express warranties to Plaintiffs and Class members in written form on the labels of the Yogurt.

37. Defendants' written affirmations of fact, promises, and/or descriptions as alleged are each a written warranty.

38. Defendants breached the warranty because the Yogurt's nutritional labeling of sugar content per serving is false and the Yogurt did not contain the properties Defendants represented.

39. The sugar content was inaccurate when Defendants distributed the Yogurt to Defendants' 347 markets, and remained false when the Yogurt was sold to Plaintiffs and the Class members. The false nutritional information provided on the label was undiscoverable to Plaintiffs and the Class members at the time of purchase of the Yogurt.

40. All conditions precedent to seeking liability under this claim for breach of express and implied warranty have been performed by or on behalf of Plaintiffs and others in terms of paying for the goods at issue. Defendants had actual and/or constructive notice of the false labeling information and to date have taken no action to remedy their breaches of express and implied warranty.

41. Defendants were on notice of their breaches of express and implied warranty by virtue of the Consumer Reports article referenced herein, as well as numerous stories including one that appeared on Good Morning America. Further, Defendants previously knew or should have known of the falsity of the label because the claimed sugar content on the Yogurt was strikingly low when compared to the entire remainder of the Greek yogurt business segment. Defendants have refused to remedy such breaches.

42. By placing the Yogurt into the stream of commerce, by operation of law including Mass Gen. Laws Ann. Ch. 106, §§ 2–314 – 318, California Civil Code §1791 *et seq.*, and 810 ILCS 5/2-314 *et seq.*, Defendants also impliedly warranted to Plaintiffs and Class members that the Yogurt was accurately labeled in conformance with the law.

43. Defendants' breaches of warranty have caused Plaintiffs and Class members to

suffer injuries, paying for falsely labeled products, and entering into transactions they would not have entered into for the consideration paid. As a direct and proximate result of Defendants' breaches of warranty, Plaintiffs and Class members have suffered damages and continue to suffer damages, including economic damages in terms of the difference between the value of the Yogurt as promised and the value of the Yogurt as delivered.

44. As a result of the breach of these warranties, Plaintiffs and Class members are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and/or other relief as deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.

## COUNT II
## UNJUST ENRICHMENT
### (On Behalf of the National Class and State Subclasses)

45. Plaintiffs re-allege and incorporate by reference all factual allegations in this Class Action Complaint as though set forth fully herein.

46. Plaintiffs and the Class have conferred substantial benefits on Defendants by purchasing the Yogurt, and Defendants have knowingly and willingly accepted and enjoyed these benefits.

47. Defendants either knew or should have known that the payments rendered by Plaintiffs and the Class were given and received with the expectation that the Yogurt would be as represented and warranted. For Defendants to retain the benefit of the payments under these circumstances is inequitable.

48. Defendants, through deliberate misrepresentations or omissions in connection with the advertising, marketing, promotion, and sale of the Yogurt reaped benefits, which resulted in Defendants' wrongful receipt of profits.

49.     Equity demands disgorgement of Defendants' ill-gotten gains.  Defendants will be unjustly enriched unless Defendants are ordered to disgorge those profits for the benefit of Plaintiffs and the Class.

50.     As a direct and proximate result of Defendants' wrongful conduct and unjust enrichment, Plaintiffs and the Class are entitled to restitution from and institution of a constructive trust disgorging all profits, benefits, and other compensation obtained by Defendants.

**COUNT III**
**DECLARATORY AND INJUNCTIVE RELIEF**
**(On Behalf of the National Class and the State Subclasses)**

51.     Plaintiffs re-allege and incorporate by reference all factual allegations contained in this Class Action Complaint as though set forth fully herein.

52.     Defendants acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole within the meaning of Fed. R. Civ. P. 23.

53.     Plaintiffs, on behalf of themselves and putative Class members, seek a Court declaration of the following:

a.  The Yogurt developed, manufactured, marketed, tested and sold by Defendants on or after August 1, 2010 contained false and misleading nutritional information;

b.  Defendants knew or should have known of the false information they provided to Plaintiffs and Class members and thereby breached their warranties to Plaintiffs and the Class; and

c.  Defendants shall remove all falsely labeled Yogurt from their shelves, or re-label with accurate nutritional information.

d.  Defendants shall institute a corrective advertising campaign to educate consumers about the fact that the Yogurt was falsely labeled and to inform them about the true sugar content of the Yogurt.

**COUNT IV**
**VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW**
**CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200 *et seq.***
**(On Behalf of the California Subclass)**

54.     Plaintiffs re-allege and incorporate by reference all factual allegations contained in this Class Action Complaint as though set forth fully herein.

55.     California Business & Professions Code § 17200, *et seq.* (the "UCL") prohibits acts of "unfair competition," which is defined by the UCL as including "any unlawful, unfair or fraudulent business act or practice . . . ."

56.     Defendants have engaged in unfair competition and unfair, unlawful, or fraudulent business practices by the conduct, statements, and omissions described above, and by concealing from Plaintiff Trevino and California Subclass members the material fact that the sugar content per serving in the Yogurt was nearly six times the claimed amount on the label. Defendants should have disclosed this information because they were in a superior position to know the true facts related to nutritional content of the Yogurt.

57.     Defendants' conduct is unlawful in that it violates, without limitation, the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.*, and California's False Advertising Law, California Business & Professions Code § 17500 *et seq.* Defendants' conduct is unfair in that it offends established public policy and/or is immoral, unethical, oppressive, unscrupulous, and substantially injurious to Plaintiff Trevino and California Subclass members. The harm to Plaintiff Trevino and California Subclass members arising from Defendants' conduct outweighs any legitimate benefit Defendants derived from the conduct. Defendants'

conduct undermines and violates the stated spirit and policies underlying the Consumers Legal Remedies Act and the False Advertising Law as alleged herein. Defendants' actions and practices constitute fraudulent business practices in violation of the UCL because, among other things, they are likely to deceive reasonable consumers. Plaintiff Trevino relied on Defendants' representations and omissions.

58.     These acts and practices have deceived Plaintiff Trevino and are likely to deceive persons targeted by such statements and omissions. In failing to disclose the true nutritional information for the Yogurt, Defendants breached their duties to disclose these facts, violated the UCL, and caused injuries to Plaintiff Trevino and California Subclass members. The omissions and acts of concealment by Defendants pertained to information that was material to Plaintiff Trevino and California Subclass members, as it would have been to all reasonable consumers.

59.     The injuries suffered by Plaintiff Trevino and California Subclass members are also greatly outweighed by any potential countervailing benefit to consumers or to competition. Nor are they injuries that Plaintiff Trevino and California Subclass members should or could have reasonably avoided.

60.     Plaintiff seeks to enjoin further unlawful, unfair, and/or fraudulent acts or practices by Defendants, to obtain restitutionary disgorgement of all monies and revenues generated as a result of such practices, and all other relief allowed under the UCL.

## COUNT V
## VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT, CALIFORNIA CIVIL CODE § 1750, *et seq.*
### (On Behalf of the California Subclass)

61.     Plaintiffs incorporate by reference and re-allege all factual allegations in this Complaint as if fully set forth herein.

62.     Plaintiff Trevino brings this claim individually and on behalf of the California

Subclass.

63.    This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.* (the "CLRA") because Defendants' actions and conduct described herein constitute transactions that have resulted in the sale or lease of goods or services to consumers.

64.    Plaintiff Trevino and each member of the California Subclass are consumers as defined by California Civil Code §1761(d).  Defendants intended to sell the Yogurt.

65.    The Yogurt products are goods within the meaning of Civil Code §1761(a).

66.    Defendants violated the CLRA in at least the following respects:

        a.    in violation of  §1770(a)(5), Defendants represented that the Yogurt products have characteristics, ingredients, and benefits which they do not have;

        b.    in violation of §1770(a)(7), Defendants represented that the Yogurt products are of a particular standard, quality, or grade when they are of another;

        c.    in violation of §1770(a)(9), Defendants have advertised the Yogurt products with intent not to sell them as advertised; and

        d.    in violation of §1770(a)(16), Defendants represented that the Yogurt products have been supplied in accordance with previous representations, when they were not.

67.    Defendants violated the CLRA by representing the Yogurt products as having two grams of sugar when in fact they had much more sugar.  Defendants knew, or should have known, that the representations and advertisements were false and misleading.

68.    Defendants' acts and omissions constitute unfair, deceptive, and misleading business practices in violation of Civil Code §1770(a).

69.    On August 29, 2014, Plaintiff Trevino sent notice to Defendants in writing, by

certified mail, of the violations alleged herein and demanded that Defendants remedy those violations.

70. On October 3, 2014, Defendants responded to Plaintiff Trevino's demand letter by refusing to provide any of the relief requested by Plaintiff and categorically denying that Defendants have committed a violation of the CLRA. As a result, Plaintiffs now seek actual, punitive, and statutory damages pursuant to the CLRA for the California Subclass.

71. Defendants' conduct is malicious, fraudulent, and wanton in that Defendants intentionally and knowingly provided misleading information to the public.

**COUNT VI**
**VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND**
**DECEPTIVE BUSINESS PRACTICES ACT**
**(On Behalf of the Illinois Subclass)**

72. Plaintiffs re-allege and incorporate by reference all factual allegations contained in this Class Action Complaint as though set forth fully herein.

73. The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* (the "ICFA") prohibits the use of unfair or deceptive business practices in the conduct of trade or commerce. The ICFA is to be liberally construed to effectuate its purpose.

74. Defendants intended that Plaintiff Guluba and each of the other members of the Illinois Subclass would rely upon their deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

75. As a result of Defendants' use or employment of unfair or deceptive acts or business practices, Plaintiff Guluba and each of the other members of the Illinois Subclass have sustained damages in an amount to be proven at trial.

## COUNT VII
## VIOLATION OF M.G.L. c. 93A
### (On Behalf of the Massachusetts Subclass)

76.     Plaintiffs re-allege and incorporate by reference all factual allegations contained in this Class Action Complaint as though set forth fully herein.

77.     Plaintiffs Knox and McDonagh bring this claim on behalf of themselves and all other Massachusetts Subclass members who purchased the Yogurt, asserting claims pursuant to M.G.L. c. 93A.

78.     M.G.L. c. 93A, § 2 provides that "unfair methods of competition and unfair and deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." M.G.L. 93A, § 9 permits any consumer injured by a violation of M.G.L. c. 93A, § 2 to bring a civil action, including a class action, for damages and injunctive relief.

79.     As alleged more fully herein, Defendants have violated c. 93A, § 2 by providing the Yogurt in a manner such that it failed to contain accurate data concerning sugar content, as alleged herein.

80.     Pursuant to M.G.L. c. 93A, § 9, Plaintiffs Knox and McDonagh, on behalf of themselves and the Massachusetts Subclass, seek an order:

a.     enjoining Defendants from continuing to engage in, use, or employ any of the unfair and/or deceptive business acts or practices set forth in detail above; and

b.     disgorging and restoring all monies that may have been acquired by Defendants as a result of such unfair and/or deceptive acts or practices.

81.     Plaintiffs Knox and McDonagh and members of the Massachusetts Subclass will be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

82.     The unfair and deceptive acts and practices of Defendants, as described above, present a serious threat to Plaintiffs Knox and McDonagh and members of the Massachusetts Subclass.

83.     Plaintiffs Knox and McDonagh sent Defendants a demand letter pursuant to c. 93A, §9(3), on August 29, 2014.  Defendants responded through their counsel in a letter dated September 25, 2014, refusing to provide any of the relief requested by Plaintiffs Knox and McDonagh.

84.     Based on the foregoing, Plaintiffs Knox and McDonagh and the other members of the Massachusetts Subclass are entitled to all remedies available pursuant to c. 93A including, but not limited to, refunds, actual damages, or statutory damages in the amount of twenty five dollars per violation, whichever is greater, double or treble damages, attorneys' fees and other reasonable costs.

85.     Pursuant to M.G.L. c. 231, § 6B, Plaintiffs Knox and McDonagh and other members of the Massachusetts Subclass are further entitled to pre-judgment interest as a direct and proximate result of Defendants' wrongful conduct.  The amount of damages suffered is a sum certain and capable of calculation and Plaintiffs Knox and McDonagh and Massachusetts Subclass members are entitled to interest in an amount according to proof.

86.     Massachusetts has a strong interest in applying the c. 93A to the conduct at issue here.  Plaintiffs Knox and McDonagh are located here, as is the Massachusetts Subclass, and Defendants advertised, marketed, and sold products in Massachusetts.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this case be certified and maintained as a Class action and for judgment to be entered in favor of Plaintiffs and the Class against Defendants as follows:

A.  Enter an order certifying the proposed Class, designating Plaintiffs as the Class representative, and designating the undersigned as Class counsel;

B.  Declare that Defendants are financially responsible for notifying all Class members of the problems with the labeling of the Yogurt;

C.  Declare that Defendants must disgorge, for the benefit of the Class, all or part of the ill-gotten profits they received from the sale of the Yogurt, or order Defendant to make full restitution to Plaintiffs and the members of the Class;

D.  For economic and compensatory damages on behalf of Plaintiffs and all members of the Class;

E.  For punitive or exemplary damages;

F.  For injunctive and declaratory relief;

G.  For reasonable attorneys' fees and reimbursement of all costs for the prosecution of this action; and

H.  For such other and further relief as this Court deems just and appropriate.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated:  October 6, 2014          Respectfully submitted,

By:/s/ Erica C. Mirabella_____
Erica C. Mirabella (MA Bar No. 676750)
MIRABELLA LAW
132 Boylston St., 5th Flr.
Boston, MA 02116
(617) 580-8270
(617) 583-1905 (fax)

Matthew E. Miller (MA Bar No. 559353)
William H. Anderson
CUNEO GILBERT & LADUCA, LLP
507 C Street, NE
Washington, DC 20002
(202) 789-3960
(202) 789-1813 (fax)

Charles J. LaDuca
CUNEO GILBERT & LADUCA, LLP
8120 Woodmont Ave. Suite 810
Bethesda, MD 20814
(202)789-3960
(202) 789-1813 (fax)

Jon Herskowitz
BARON & HERSKOWITZ
9100 S. Dadeland Blvd.
Suite 1704
Miami, FL 33156
(305) 670-0101
(305) 670-2393 (fax)

Tina Wolfson
Robert Ahdoot
Theodore W. Maya
AHDOOT & WOLFSON, PC
10850 Wilshire Blvd., Suite 370
Los Angeles, California 90024
(310) 474-9111
(310) 474-8585 (fax)

Joe Siprut
SIPRUT PC
17 North State Street
Suite 1600
Chicago, IL  60602
(312) 236-0000
(312) 546-9963 (fax)